MOBILE, JACKSON & KANSAS CITY RAILROAD CO. v. KEA.

[66 South. 735.]

RAILROADS.   *Frightening stock.   Negligence.*

> An engineer in charge of a running train, is not required to stop merely because he sees animals near the track and running along it.   He is only required, to do what is reasonable and prudent under the circumstances.   Under the facts in this case as shown in the opinion of the court, a peremptory instruction should have been given for the defendant.

APPEAL from the circuit court of Neshoba county.

HON. C. L. DOBBS, Judge.

Suit by J. J. Kea against the Mobile, Jackson & Kansas City Railroad Company.   From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Flowers, Brown & Davis,* for appellant.

1.   The injury complained of not having been inflicted by the running of the locomotives or cars of appellant, as in section 1985 of the Code, raising the presumption of negligence, does not apply.   *M. J. & K. C. R. Co.* v. *Kea,* 50 So. 628; *Lowe* v. *A. & V. R. Co.,* 51 Miss. 9.

2.   Before recovery can be had for injury to an animal which has strayed upon the tracks of a railroad company,

it must be shown that such injury resulted from some negligence, or mismanagement on the part of the servants of the railroad company. *Raiford* v. *Railroad Co.*, 43 Miss. 233; *M. J. & K. C. R. R. Co.* v. *Kea*, 50 So. 628; *Railroad Co.* v. *Enochs*, 42 Miss. 603; *Railroad Co.* v. *Blakeney*, 43 Miss. 218; *Railroad Co.* v. *Miller*, 40 Miss. 45; *Lowe* v. *Railroad Co.*, 32 So. 907; *Beasley* v. *Railroad Co.*, —— So. 864.

3. It was not necessary to stop or check the train because the horse was near the road and ran along it, therefore no negligence whatever has been shown. *N. O. N. E. R. R. Co.* v. *Thornton*, 3 So. 654; *R. R. Co.* v. *Money*, 8 So. 646; *Railroad Co.* v. *Wright*, 28 So. 806; *Railroad Co.* v. *Lowe*, 32 So. 907; *Railroad Co.* v. *Hudson*, 50 Miss. 572.

*G. E. Wilson*, for appellee.

Our court in a case where the question of negligence was not nearly so strong as the case at bar, held that the determination of the question was for the jury. *Quinn* v. *Southern Ry. Co.*, 21 So. 6. In reversing the case and announcing the opinion that the same should have been submitted to the jury, the court cited *Scott* v. *Railroad Co.*, 72 Miss. 37; *Holmes* v. *Simon*, 71 Miss. 245. Also, in the case of *Roberts* v. *Mobile & Ohio R. R. Co.*, 21 So. 10, it is held that notwithstanding an animal was trespassing on the railroad track, that it does not preclude a recovery by the owner for its being killed by a train through the negligence of those in charge of it, or prevent the application to the case of Code of 1892, section 1808, providing that the killing shall be *prima facie* evidence of negligence, also where the evidence as to the killing of stock by a railroad train is conflicting, the case should be submitted to the jury.

In the case of the *Yazoo & Mississippi Valley R. R. Co.* v. *Lambreth*, it is held that a horse grazing near a railroad track, being frightened at the whistle of the en-

gine, ran into an opening between the embankment on which the track was laid and the wire fence, erected on the right-of-way with the company's consent, until he came to a point where the fence and the bank met, and terrified at the approaching engine, attempted to leap the fence and was injured, and the engineer testified that he did not see the animal, that the jury was warranted in finding that the company's servants were negligent. (21 So. 801.) In this case the animal was not struck by the train at all but was killed in a similar manner to the animal in the case now in question. How can this case be reversed without the court reversing absolutely this decision?

On the question of negligence, we further call the attention of the court to *Young* v. *Ill. Central R. R. Co.*, 40 So. 870; *McMillan* v. *Southern Ry. Co.*, 23 So. 182. As to a satisfactory solution of the principles involved in this case, we call the court's special attention to the case of *Kansas City, Memphis & Birmingham R. R. Co.* v. *Doggett*, 67 Miss. 250.

In the case of the *Mobile & Ohio R. R. Co.* v. *Holt*, in which a cow was killed, the court of our state in its opinion, speaking with reference to the duty of the railroad company, said: "Should it, under the circumstances, have foreseen that the natural instinct of a terrified brute would necessarily impel it to seek the other and obstructed side, where all its companions were, and was its whole duty done when it run on without reference to the cow to close pursuit? We cannot say that the law makes any rule on the subject. It was particularly a question of common sense and common experience, and as ever, we are contented to leave it to the jury, who seem to have been correctly instructed."

All of the foregoing authorities are from our own state court. In addition thereto, on the question as to whether or not the court should have granted the peremptory instruction asked by appellant in the case, we submit the

following.   6 Rapelje & Mack's Digest of Railway Law, 802.

REED, J., delivered the opinion of the court.

Appellee recovered judgment against appellant for the value of a mare.   The animal was not struck by a train of appellant, but was injured by running into and falling from a trestle on the roadway.   This case was before the court on a former appeal.  *Railroad Co.* v. *Kea,* 96 Miss. 195, 50 So. 628.   It was then decided that section 1985 of the Code of 1906, which raises the presumption of negligence, has no application to the case, "as the mare was not struck or injured by the running of a train."   On this appeal it is again contended that the peremptory instruction to find for appellant should have been given.

It was necessary for appellee to prove that the injury to the animal resulted from some negligence by the appellant.   Reasonable care and prudence only is required of a railroad company in the running of its trains so as to avoid injury to animals on its track.   The mare, accompanied by her colt, was seen, immediately before the injury, feeding just outside the right of way.   When they were seen by the engineer, they were near the track and about four hundred yards distant from the trestle.   The track was downgrade, and the engineer got his train under control and blew the cattle alarm whistle.   The animals began running on the right of way and along the track, at first going through borrow pits.   These borrow pits—that is, depressions formed by the taking or borrowing, of earth to build the railroad embankment—were from eight to fifteen feet in width, and were at the point where the animals were first seen shallow, but became deeper as they neared the trestle and the embankment was higher.   After running in the pits or depressions for a distance, the animals got upon level ground and continued to run.   Then they went on the track, and ran on down to the trestle, which the mare attempted to cross,

and jumped or fell therefrom. The train was about two hundred yards from the animals when first noticed by the witnesses. The train slowed up, and was brought to a stand some thirty or forty yards—say at least one hundred feet—from the trestle, and at least one hundred and twenty-five feet from where the mare went off the trestle. The right of way was not fenced. It appears from the evidence that brush and logs from the clearing of the right of way several years prior were piled along the right of way. There was an opening about where the animals entered the right of way, and one or more openings along the way to the trestle. It is not shown that an impassable obstruction was caused by the accumulation of the logs and brush. The borrow pits were separated one from the other by a strip of earth left level with the general surface over which the animals could have gone. The right of way was fifty feet wide on the side where the animals were running, and they could have gone out of the borrow pits on the side opposite to the roadway. From the right of way outside of the embankment it was only five feet to the water, or bottom of the creek or slough over which the trestle extended, and the bank was not entirely perpendicular.

The recovery in this case is based upon the theory that the injury resulted from the animal's being frightened at the approaching train. But in order to recover it was incumbent upon appellee to show that the injury was caused by the negligence of the company's servants. Appellant has failed in this. The engineer was not required to stop merely because he saw the animals near the track and running along it. He is only required to do what is reasonable and prudent under the circumstances. It is in evidence that the train was properly equipped and that the employees were competent. The train was brought under control, and actually brought to a stop, quite a distance from where the animal was injured. Considering all the facts and circumstances of this case, we do not see

that the servant of appellant, the engineer, failed to do all that was required of him as a man of ordinary prudence. The peremptory instruction to find for appellant should have been given.

Reversed, and judgment here for appellant.

*Reversed.*

SMITH, C. J. (dissenting).

This is the second appearance of this case in this court, the facts on each appeal being practically the same. 96 Miss. 195, 50 So. 628. On the former appeal one of the assignments of error was that the court below erred in granting the railroad company a peremptory instruction. A majority of the court declined to reverse the case because of the refusal of the court below to grant this instruction; but it was reversed because of an error in the granting of instructions to the plaintiff.

As I understand the case as made by the evidence for the plaintiff, this trestle from which the animal fell and was injured spanned a "slough" or "lake" in which there was water at the time. For a distance of at least six hundred yards north of this trestle there was a line of borrow pits, making practically a continuous excavation fifteen or twenty feet wide, containing water, but how much does not appear. These borrow pits began at a depth of about one foot and increased to the depth of about four feet at the trestle. The embankment at this distance north of the trestle was about one foot high, and increased in height to about three feet at the trestle. On the outer edge of the right of way was a practically continuous line of brush and logs, which had been placed there when the right of way was cut out, and along which bushes had grown up. In this line of logs and brush there were one or two openings through which the stock could pass. Plaintiff's mare and colt were discovered by the defendant's engineer on the right of way four hundred yards north of this trestle, and when the train was

two hundred yards north of them, the train then being
six hundred yards north of the trestle. A stock alarm
was given, whereupon the animals became frightened and
commenced to run down the right of way ahead of the ap-
proaching train. They ran for a short distance down
these borrow pits, then got upon the leval ground next
to the embankment and ran down that for a short dis-
tance, until, in the language of one of the witnesses, "the
'bar' pits came so close" that they got upon the track
and ran down the center thereof until they reached the
trestle, when they ran into the trestle, and the mare fell
off and was injured. The place at which they crossed to
the center of the track, and commenced to run down be-
tween the rails thereof, was about thirty or forty yards
north of the trestle. The engineer of the train knew that
this trestle was there; that the borrow pits and logs and
brush, etc., extended along the track as hereinbefore set
out. The train was running at the usual speed—according
to one witness about twenty, and another twenty-five
miles an hour. Its speed was not checked, and it gained
on the animals as they ran. It was stopped, however,
at the place where the animals went onto the track; that
is, about thirty or forty yards north of the trestle. It
was stopped suddenly, and its speed was not checked be-
fore that time, except in so far as it was necessarily
checked in bringing the train to a stop, which stop was a
sudden one, as stated by plaintiff's witnesses, and was
not made by gradually checking the speed of the train.
In contradiction of this the defendant's employees testi-
fied that the train was carefully handled, and that every-
thing that could be was done in order to prevent the in-
jury; the speed of the train being checked and it brought
fully under the control of the engineer as soon as the
stock were discovered.

On this evidence I think the case was correctly sub-
mitted to the jury. On the evidence for the plaintiff it
was for the jury to say whether or not the injury could

have been avoided if the engineer, "paying regard to the known habits and instincts of animals to try to escape from the cul-de-sac (or what practically amounted thereto) in which they were found by him, had slackened" the speed of his train, and whether or not he in fact did so slacken its speed was a matter for the jury's determination, the evidence relative thereto being conflicting. The engineer should have remembered that, frightened and situated as they were, these animals were just as apt to attempt to cross the track, or to run down it, as they were to cross these borrow pits.